1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

10

EDDIE A. OTERO,

CASE NO.  C08-5666RJB

11

Petitioner,

REPORT AND
RECOMMENDATION

12

v.

13

STATE OF WASHINGTON, STEVE
SINCLAIR

Noted for June 26, 2009

14

Respondent.

15

16

    The underlying Petition for a Writ of Habeas Corpus has been referred to United States

17

Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and 636 (b)(1)(B),

18

and Local Magistrates Rule MJR3 and MJR4.   Petitioner is challenging a state criminal

19

conviction and sentence arising out of the Washington State Superior Court for Clark County.

20

21

## **FACTUAL AND PROCEDURAL BACKGROUND**

22

    At approximately 3:00 a.m. on August 16, 2004, Jennifer O'Neil and Juan Barboza were

23

victims of a drive-by shooting in Vancouver, Washington.  Police investigated.  Petitioner and a

24

co-defendant, Angel Barasa, were arrested and charged with two counts of attempted first degree

25

murder.  The Information alleged that the two had premeditated to kill Jennifer O'Neil and Juan

26

Barboza.  The Information also alleged that Otero and Barasa were armed with a firearm at the

time of the murder.  After several pretrial matters, a jury trial took place on November 30

through December 7, 2004.  On December 8, 2004, the jury returned and found both Petitioner

and his co-defendant guilty as charged.

Evidence at trial indicated the drive-by shooting was a retaliatory act when Petitioner and

Mr. Barasa learned the night before that a rival gang had attacked three of their gang members

with baseball bats.  In the early morning hours, Petitioner, Mr. Barasa, and another man (Steve

Sanchez, who later testified at the trial) drove a grey Suburban into an apartment complex, where

they believed they might find members of the rival gang.  They saw some people outside

smoking and turned around.  When they came back to where the people were smoking, one of

the occupants of the car asked them, "Where you vatos from?"  Gunshots were fired at the

victims, and they drove out of the apartment complex.  Ms. O'Neil and Mr. Barboza had been

shot, and they were later successfully treated at a hospital.   Shell casings from two guns (a .45

caliber and a .38 caliber) were found at the scene of the shooting.

On January 6, 2005, Petitioner was sentenced.  The trial judge specifically noted that the

jury had returned a special verdict, finding Petitioner had used a firearm in the commission of the

two counts of attempted murder.  Exhibit 2, attached to Respondent's submission of the relevant

state court record (Doc. 19).  With standard ranges calculated at 210 -- 280 months and 180 –

240 months on the two counts of attempted murder, with 60-month firearm enhancements on

each, Petitioner was sent to prison to serve a 552 month sentence.  *Id*.

Petitioner pursued a direct appeal of the convictions and sentence.  On Febraury7, 2006

the State Court of Appeals denied his claims.  Petitioner unsuccessfully sought review by the

Washington State Supreme Court and a mandate was issued by the Court of Appeals on

1    November 7, 2005, officially terminating Petitioner's direct appeal. Petitioner has not filed any

2    collateral or personal restraint petitions in state court.

3            On November 4, 2008, the instant Petition for Writ of Habeas Corpus was filed.

4    Petitioner raises the following nineteen claims:

5        1.  The trial court erred in admitting Exhibit 21, the typed statement of Stephen Sanchez

6

7        2.  The trial court erred by imposing a "firearm" sentencing enhancement when in fact the
     jury returned a "deadly weapon" verdict, thereby denying the defendant his Federal Sixth
8    Amendment (as well as Washington State Constitution) rights to a jury trial.

9        3.  The trial court erred by imposing a "firearm" sentencing enhancement based upon a
     jury finding that was inconsistent with the enhancement allegation in the charging document,
10   thereby violating the defendant's Due Process rights.

11       4.  There was insufficient evidence presented at trial of an element of Attempted Murder
     in the First Degree (the element of intent to kill) of Jennifer O'Neil.
12

13       5.  There was insufficient evidence presented at trial of an element of Attempted Murder
     in the First Degree (the element of premeditation) of Jennifer O'Neil.
14

15       6.  There was insufficient evidence presented at trial of an element of Attempted Murder
     in the First Degree (the element of intent to kill) of Juan Barboza.
16

17       7.  There was insufficient evidence presented at trial of an element of Attempted Murder
     in the First Degree (the element of premeditation) of Juan Barboza.
18

19       8.  The trial court erred in admitting evidence of gang affiliation.

20       9.  The affidavit in support of the search warrant herein set forth insufficient probable
     cause. This assignment of error is based upon Article I, Section 7 of the Constitution of the State
21   of Washington and the Fourth and Fourteenth Amendments of the Constitution of the United
     States.
22

23       10.  The affidavit for the search warrant was deficient in that there was insufficient
     showing of informant veracity. This assignment of error is based upon Article I, Section 7 of the
24   Constitution of the State of Washington and the Fourth and Fourteenth Amendments of the
     Constitution of the United States.
25

26       11.  The affidavit for the search warrant was deficient in that, in the instance of
     informants, Martin Chavez and Tim Sanchez, there was insufficient showing of basis of
     knowledge for several of the assertions attributed to them. This assignment of error is based

upon Article I, Section 7 of the Constitution of the State of Washington and the Fourth and Fourteenth Amendments of the Constitution of the United States.

12. The affidavit for the search warrant was deficient in that, in the information contained therein was stale as it related to items said to be in the defendant Otero's possession. This assignment of error is based upon Article I, Section 7 of the Constitution of the State of Washington and the Fourth and Fourteenth Amendments of the Constitution of the United States.

13. The post-arrest statements of the defendant Otero should have been suppressed because of the illegality of the arrest itself.

14. The trial court erred in its CrR 3.6 hearing Finding of Fact 4. There is insufficient evidence in the record to support such a finding.

15. The trial court erred in its CrR 3.6 hearing Finding of Fact 7. There is insufficient evidence in the record to support such a finding.

16. The trial court erred in its CrR 3.6 hearing Finding of Fact 8. There is insufficient evidence in the record to support such a finding.

17. The prosecutor was guilty of misconduct when he elicited clearly irrelevant, unfairly prejudicial evidence from Detective Jay Alie. The nature of this misconduct was so flagrant and ill-intentioned that it could not be remedied by a curative instruction.

18. If the prosecutor's questioning did not constitute misconduct, the statements of the witness Detective Alie constituted an irregularity that deprived defendant Otero of a fair trial.

19. The defendant Otero was denied a fair trial due to the cumulative effect of errors occurring throughout the trial.

The court notes these are the same nineteen claims raised by petitioner in his brief filed with the Washington State Court of Appeals on direct appeal. Exhibit 4 at i-iii.

## EVIDENTIARY HEARING NOT REQUIRED

The function of an evidentiary hearing is to try issues of fact; such a hearing is unnecessary when only issues of law are raised. *See, e.g.*, Yeaman v. United States, 326 F.2d 293 (9th Cir. 1963). The undersigned magistrate judge concludes that there are no relevant factual disputes to resolve in order for the Court to render its decision in this case. Accordingly, an evidentiary hearing was not conducted.

# DISCUSSION

## A.  Standard of Review

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension.  Engle v. Isaac, 456 U.S. 107 (1983).  Section 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States."  28 U.S.C. § 2254(a)(1995).  The Supreme Court has stated many times that federal habeas corpus relief does not lie for mere errors of state law.  See, e.g., Estelle v. McGuire, 502 U.S. 62 (1991); Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984).

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d).   Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. §2254(e)(1).

Before granting relief, the district court must first determine whether the state court decision was erroneous.  Van Tran v. Lindsey, 212 F.3d 1143, 1155 (9th Cir. 2000), *cert. denied*, 121 S.Ct. 340 (2000). The district court must then determine whether the state court decision involved an unreasonable application of clearly established federal law.  Id.  The district court may grant habeas relief only if it finds the state court decision was unreasonable.  Weighall v. Middle, 215 F.3d 1058, 1063 (9th Cir. 2000); Van Tran, 212 F.3d at 1153.

1    ***B.     Exhaustion***

2         Exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of

3    habeas corpus.  28 U.S.C. § 2254(b)(1)(A), (c).  The exhaustion requirement is "grounded in

4    principles of comity and reflects a desire to 'protect the state courts' role in the enforcement of

5    federal law.' " Castille v. Peoples, 489 U.S. 346, 349 (1989) (*quoting* Rose v. Lundy, 455 U.S.

6    509, 518 (1982)).  Pursuant to § 2254(c), exhaustion typically requires that "state prisoners must

7    give the state courts one full opportunity to resolve any constitutional issues by invoking one

8    complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526

9    U.S. 838, 845 (1999).  A petitioner can demonstrate that he has exhausted his state court remedy

10   by providing evidence to the federal court that the issue was presented to the highest state court

11   with a full and fair opportunity to consider all claims.  Picard v. Connor, 404 U.S. 270, 276

12   (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir.), *cert. denied*, 478 U.S. 1021 (1986).

13        Full and fair presentation of claims to the state court requires "full factual development"

14   of the claims in that forum.  Kenney v. Tamayo-Reyes, 504 U.S. 1, 8 (1992).  Petitioners must

15   present their claims to the state court in a manner that does not force the courts to search for

16   federal claims by reading through the whole record of the lower court.  Baldwin v. Reese, 541

17   U.S. 27, 32 (2004).  In Duncan v. Henry, 513 U.S. 364, 365-66, (1995), the Supreme Court held

18   that a petitioner does not exhaust a federal claim by raising a state claim that is similar to the

19   federal claim: "mere similarity of claims is insufficient to exhaust."  A prisoner's vague claim in

20   state court that his conviction was a "miscarriage of justice" was insufficient to alert the state

21   court to an alleged violation of federal due process rights.  Id. at 364-65.  However, the Supreme

22   Court in Duncan left open the question of what happens when the state and federal standards are

23   not merely similar, but rather are identical or functionally identical.  In Sanders v. Ryder, 342

F.3d 991(9th Cir. 2003), the Ninth Circuit held that the right to effective assistance of counsel is essentially identical under the United States Constitution and the Washington State Constitution. Thus, when <u>Sanders</u> raised the claim of ineffective assistance of counsel, without citing or referring to the U.S. Constitution or federal case law, he nonetheless had properly exhausted the claim for federal habeas review.  <u>Id</u>. at 1001.  *See also* <u>Insyxiengmay v. Morgan</u>, 403 F.3d 657, 668-69 (9th Cir.2005)(attaching the personal restraint petition that included referents to federal law, was sufficient to satisfy federal habeas exhaustion requirements).  Therefore, it appears that in the Ninth Circuit, at least, so long as defendant exhausts state claims that are essentially identical to federal constitutional claims, the prisoner has properly exhausted those claims for federal habeas corpus.

Respondent argues Petitioner has properly exhausted only Claims 2 and 3 within the meaning of 28 U.S.C. § 2254(b).  Respondent argues Claims 1 and 4-19 have not been exhausted due either to Petitioner's failure to raise the claims with the state's highest court or to present the claims as federal claims.  Respondent further argues Claims 1 and 4-19 are now procedurally barred by the Washington state statute of limitations. Wash. Rev. Code § 10.73.090, Wash. Rev. Code § 10.73.140, and Washington Rule of Appellate Procedure 16.4(d).

After reviewing the record it is clear that Petitioner did not raise all nineteen claims when he filed his Petition for discretionary review with the Washington State Supreme Court.  The only claims raised with the Washington State Supreme Court were Claims 1-3.  *See* Exhibit 9 (Petitioner raised claims only related to the trial court's admission of Exhibit 21 (Claim 1) and the imposition of the firearm enhancement (Claims 2 & 3).  Moreover, it appears Claim 1 was presented to the Washington State Supreme Court only as a matter of state law.  *Id*.  In sum, the undersigned agrees that only Claims 2 & 3 in the instant Petition have been properly exhausted.

However, Petitioner has argued and presented evidence that suggests he attempted to properly exhaust all of his claims. Appendix II, attached to the Petitioner, is a letter dated October 3, 2008 written by Petitioner's state appellate attorney. The letter states that only three claims were presented to the Washington State Supreme Court due to the 20-page limit, "making it imperative to pick and argue the right issues rather than waste space on issues you know will not fit the considerations set forth in RAP 13.4(b)."

The court notes that Petitioner could have, and probably should have, filed a Personal Restraint Petition to attempt to properly exhaust the other seventeen issues now before this court. Accordingly, the court finds that Petitioner has failed to exhaust all but Claims 2 and 3 presented in the current petition and that Petitioner would now be procedurally barred by the state from attempting to exhaust all of his claims. Nonetheless, because there are substantive problems with the other seventeen issues, which would also constitute grounds for dismissal, the undersigned finds it prudent and a matter of judicial economy to proceed and consider the merits of all nineteen claims.

*C.* *Petitioner Has Presented Claims Related Only To State Law Related To the Trial Court's Admission of Exhibit 21(Claim 1) And Evidence of Gang Affiliation (Claim 8)*

Federal habeas corpus is available only on behalf of a person in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991). Federal habeas corpus review is not available to retry state issues. Milton v. Wainwright, 407 U.S. 371, 377 (1972). "A federal court may not issue the writ on the basis of a perceived error of a state law." Pulley v. Harris, 465 U.S. 37, 41 (1989). Federal courts cannot consider whether state law was properly applied. Paradis v. Arave, 954 F.2d 1483, 1493 (9th Cir. 1992), *vacated on other grounds by*, Arave v. Paradis, 507 U.S. 1026 (1993), *on remand*, Paradis v. Arave, 20 F.3d 950 (9th Cir. 1994), *cert. denied*, Paradis v. Arave,

513 U.S. 1117 (1995).  Federal courts will presume that the state courts properly applied their own law. Woratzeck v. Stewart, 97 F.3d 329, 336 (9th Cir. 1996).

Here, Petitioner argues the typed statement of Stephen Sanchez (Exhibit 21) was erroneously admitted at trial (Claim 1).  Specifically, Petitioner argues the statement "was not given under oath in a prior proceeding as required by ER801(d)(1)(i)" and the requirements of RCW 9A.72.085 were not adhered to by the trial court.  Petition, Appendix I at 4.  With respect to Claim 8, Petitioner argues the evidence did not provide the necessary nexus between the shooting and gang affiliations. *Id*. at 8.

Both claims (Claims 1 & 8) raise issues of state evidentiary law.  As noted above, state courts' evidentiary rulings are not a proper subject for federal habeas corpus review.  The Washington State Court of Appeal's decision addressing these claims when Petitioner raised them at that level supports finding that these claims only raise issues of state law, and the Court should presume the State Court of Appeal's properly apply their own law.  The State Court of Appeals wrote:

EVIDENTIARY RULINGS

Otero and Barasa both assign error to two evidentiary rulings, the admission of gang affiliation evidence, and Sanchez's written statement, Exhibit 21. We find no error that requires reversal.

We review the trial court's admission of evidence for abuse of discretion. *State v. Pirtle*, 127 Wn.2d 628, 648, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996). "A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds." *State v. Perrett*, 86 Wn. App. 312, 319, 936 P.2d 426 (*quoting Havens v. C&D Plastics, Inc*., 124 Wn.2d 158, 168, 876 P.2d 435 (1994», *review. denied*, 133 Wn.2d 1019 (1997). The appellant bears the burden of proving abuse of discretion. *State v. Hentz*, 32 Wn. App. 186,190,647 P.2d 39 (1982), *rev'd on other grounds*, 99 Wn.2d 538 (1983).

But all error in admitting evidence is grounds for reversal only when it prejudices the defendant's right to a fair trial. *State v. Howard*, 127 Wn. App. 862, 871, 113 P.3d 511 (2005)(citing *Brown v. Spokane County Fire Prot. Dist. No.1*,

100 Wn.2d 188, 196, 668 P.2d 571 (1983)), *review denied*, 156 Wn.2d 1014 (2006). In the context of evidentiary violations, error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *State v. Halstien*, 122 Wn.2d 109, 127, 857 P.2d 270 (1993). The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole. *Nghiem v. State*, 73 Wn. App. 405, 413, 869 P.2d 1086 (1994).

EVIDENCE OF GANG AFFILIATION

Otero and Barasa assign error to the trial court's admission of evidence that they were affiliated with a gang. Otero apparently challenges all evidence of gang affiliation, while Barasa limits his claim to the admission of photographs depicting Barasa and other men displaying gang colors, tattoos, and hand gestures. We find no error resulting in prejudice to Otero or Barasa.

ER 404(b) prohibits the admission of evidence to show the character of a person in order to prove that the person acted in conformity with his character on a particular occasion. *State v. Everybodytalksabout*, 145 Wn.2d 456, 466, 39 P.3d 294 (2002). ER 404(b) states:

> "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Evidence of prior bad acts, including acts that are merely unpopular or disgraceful, is presumptively inadmissible. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003); *Halstien*, 122 Wn.2d at 126. Although inadmissible to prove criminal propensity, evidence of prior acts may be admissible for other purposes, including proof of motive, intent, and the circumstances surrounding the alleged crime. *DeVincentis*, 150 Wn.2d at 17 (quoting ER 404(b)).

Because of the grave danger of unfair prejudice, evidence of gang affiliation is inadmissible unless the State establishes a sufficient nexus between the defendant's gang affiliation and the crime charged. *See State v. Campbell*, 78 Wn. App. 813, 822, 901 P.2d 1050 (1995). And evidence of gang membership is inadmissible when it proves no more than a defendant's abstract beliefs. *Dawson v. Delaware*, 503 U.S. 159, 165, 112 S. Ct. 1093, 117 L.Ed. 2d 309 (1992) (ruling that gang membership is inadmissible to prove abstract belief because ideology is protected by the constitutional rights of freedom of association and freedom of speech); *Campbell,* 73 Wn. App. at 822.

Otero and Barasa first argue that the trial court should have excluded the evidence of gang affiliation under ER 404(b). The State theorized that Otero and Barasa committed premeditated attempted murder because they were Nortino gang members, rival Sorino gang members assaulted other Nortino gang members, Otero and Barasa planned to retaliate against someone affiliated with the Sorinos, and then Otero and Barasa carried out their plan and shot the victims in order to retaliate against the rival gang. Thus, the evidence of Otero and Barasa's gang membership was presented to show motive and premeditation, two purposes valid under ER 404(b).

Otero and Barasa next argue that the State did not establish a sufficient nexus between gang affiliation and the crime charged. But the State presented Sanchez's testimony, indicating the link between the appellants' Nortino membership and their motivation and premeditation regarding the shooting. Barboza also testified that, immediately before the shooting commenced, someone in the Suburban asked them which gang they associated with. Clearly this nexus is sufficient.

[Omitted].

EXHIBIT 21

Otero and Barasa also assign error to the admission of Exhibit 21, Sanchez's statement to police, and offer the following arguments: (1) Otero claims that the exhibit was not authenticated; (2) Otero and Barasa claim that the exhibit constituted inadmissible, prejudicial hearsay; (3) Otero argues that the trial court should have excluded the exhibit under ER 403; and (4) Barasa, in his Statement of Additional Grounds (SAG),[footnote omitted] alleges police misconduct and prosecutorial misconduct in obtaining and using Sanchez's statement. We find no error.

Otero first claims that the trial court should have excluded Exhibit 21 because it was not authenticated. But Sanchez authenticated the document when he confirmed that it was the paper he read and initialed at the police station.

Second, both Otero and Barasa argue that the document was inadmissible hearsay focusing primarily on whether it was a prior inconsistent statement made under oath. Under the invited error doctrine, a criminal defendant may not set up error at trial and then complain of it on appeal. *In re Pers. Restraint of Thompson*, 141 Wn.2d 712,723, 10 P.3d 380 (2000). Otero and Barasa asked Sanchez to read his statement to the jury several times. They may not now complain that the statements they had him read were inadmissible hearsay. For this same reason, Otero's argument of unfair prejudice fails. If any prejudice resulted, Otero invited the error by eliciting Sanchez's testimony.

State v. Otero, No. 32778-3-II at 12-15, (Wash. Ct. of Appeals, filed Feb. 7, 2006).

1  In sum, Claims 1 and 8 of the Petition present issues of state law, which are not a proper

2  subject for federal habeas corpus review.  "We are not a state supreme court of errors: we do not

3  review questions of state evidence law.  On federal habeas we may only consider whether the

4  petitioner's conviction violated constitutional norms."  Jammal v. Van de Kamp, 926 F.2d 918,

5  919 (9th Cir. 1991); *see also*, Johnson v. Sublett, 63 F.3d 926, 931 (9th Cir. 1995) (stating that

6  state law foundational and admissibility questions raise no federal question.).  The State Court of

7  Appeals' decision, set forth above, clearly supports this finding.  The Court should deny and

8  dismiss Claims 1 and 8.

10  ***D.  The State's Firearm Enhancement Was Properly Applied (Claims 2 & 3)***

11  The United States Supreme Court held in Blakely that under the Sixth Amendment, any

12  fact that increases the penalty beyond the maximum a judge may impose without that fact must

13  be submitted to a jury and proved beyond a reasonable doubt.  Blakely v. Washington, 542 U.S.

14  296, 303 (2004).  Thus, the right to jury trial is violated when a sentence is based on facts found

16  only by the judge.  Id. at 304.

17  Petitioner argues when the jury returned a special verdict finding he or his accomplice

18  used a "deadly weapon" in the commission of the attempted murders, this did match the charging

19  documents (the Information) and it did not provide sufficient basis for the trial court to impose a

20  "firearm" enhancement.  After reviewing the record, the undersigned finds little to no merit to

21  Petitioner's claims.

23  The Information alleges Mr. Otero committed the attempted murder charges "while

24  armed with a firearm as that term is employed and defined in RCW 9.94A.602 and RCW

25  9.94A.510, to wit: a handgun."  Exhibit 1.  The trial court judge found a special verdict/finding

for use of a firearm was returned by the jury on both counts, citing RCW 9.94A.602 and RCW

9.94A.510. Exhibit 2.

The jury's special verdict supports the firearm enhancement. At trial the jury was given

two important instructions addressing the special verdict. Instruction No. 24 given to the jury

stated the burden was on the prosecution to prove beyond a reasonable doubt that the defendant

or his accomplice was armed with a firearm at the time of the commission of the crime. Exhibit

14. Defining "firearm", not a "deadly weapon", Instruction No. 25 restated the burden and

provided, "A person is armed with a firearm if, at the time of the commission of the crime, the

firearm is easily accessible and readily available for offensive or defensive use." *Id*. The jury

answered the special verdict form in the affirmative, but unfortunately, the special verdict form

used the term "deadly weapon" rather than simply stating a "firearm" was used in the

commission of the crimes. This was not a significant error. The evidence presented and the jury

was clearly instructed regarding the special verdict form and the firearm enhancement. The

special verdict returned by the jury supports the trial court's imposition of the firearm

enhancement. The undersigned finds no violation of Petitioner's due process or Sixth

Amendment rights.

Analyzing federal law in light of the above facts, the State Court of Appeals' reasonable

concluded the same. The state court wrote:

FIREARM SENTENCING ENHANCEMENT

Both appellants urge remand for resentencing because the trial court
violated their right to a jury trial by imposing a firearm sentencing enhancement
when the jury returned only a special verdict finding the presence of a "deadly
weapon." Barasa reasserts this argument in his SAG. The trial court properly
entered the firearm sentencing enhancement.

In *Blakely,* the United States Supreme Court held that a jury, not a judge,
must find the existence of facts upon which a defendant's sentence is increased.

*Blakely* v. *Washington, 542* U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Then, in *Recuenco,* our Supreme Court found a *Blakely* violation when the judge entered a firearm enhancement upon the jury's return of a "deadly weapon" special verdict. *State* v. *Recuenco,* 154 Wn.2d 156, 160, 162-63, 110 P.3d 1*88, rev'd on other grounds,* 126 S. Ct. 2546 (2005). In that case, the trial court instructed the jury that in order to answer the special verdict affirmatively, the State had to prove beyond a reasonable doubt that the defendant was armed with a *"deadly weapon"* when he committed assault. *Recuenco,* 154 Wn.2d at 160 (emphasis added).

We reached the opposite result in *Pharr,* even in the very similar context of a firearm enhancement predicated upon a deadly weapon special verdict. *State v. Pharr,* 131 Wn. App. 119, 124-25, 126 P.3d 66, *review pending,* 2006 Wash. LEXIS 803 (2006). But in *Pharr,* the jury instruction read: "For the purposes of a special verdict, the State must prove beyond a reasonable doubt that the defendant was armed with a *firearm* at the time of the commission of the crime." 131 Wn. App. at 124 (emphasis added). Thus, the special verdict in *Pharr,* although labeled "deadly weapon," necessarily reflected the jury's finding that the defendant was armed with a firearm. 131 Wn. App. at 124-25.

Here, the jury instructions were nearly identical to those in *Pharr,* instructing the jury that, "For purposes of a special verdict the State must prove beyond a reasonable doubt that the defendant or an accomplice was armed with a *firearm* at the time of the commission of the crime." 2 CP (Barasa) at 123; 2 CP (Otero) at 167 (emphasis added). Thus, *Pharr* controls our decision here and imposing the firearm enhancement did not violate *Blakely.*

State v. Otero, No. 32778-3-II at 21-22, (Wash. Ct. of Appeals, filed Feb. 7, 2006).

The Court should deny Petitioner's claims (Claims 2& 3) that he has been denied his federal civil and U.S. Constitutional rights when the trial court imposed a sentence that included enhancements due to the use of a firearm during the commission of the crimes.

## E.  Sufficiency of the Evidence (Claims 4-7 & 14-16)

Petitioner makes several claims that there was insufficient evidence to support the trial court's findings and his convictions, (Claims 4-7, 14-16).  Federal courts examine the sufficiency of the evidence in the light most favorable to the prosecution.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Carpenter, 95 F.3d 773, 775 (9th Cir.1996*), cert. denied*, 117 S.Ct. 1094 (1997).  The court must determine whether "any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 319; <u>United States v. Orozco-Santillan</u>, 903 F.2d 1262, 1264 (9th Cir.1990).

First, Petitioner claims there was insufficient evidence to support either of the two attempted murder convictions. Petitioner specifically asserts that sufficient evidence was not presented to support the jury's finding of either an intent to kill or premeditation. The arguments show Petitioner's lack of understanding of the *mens rea* requirement of this criminal conduct, and the undersigned finds no merit to either of these arguments. The evidence produced in this case allowed the jury to find the essential elements of the crime beyond a reasonable doubt.

The Washington State Court of Appeals fully explained the *mens rea* requirement under the state's first degree attempted murder statute and how the facts presented in this case supports the jury's decision. The court wrote:

SUFFICIENCY OF THE EVIDENCE

Otero and Barasa both assert that the evidence was insufficient to support their convictions. Barasa claims there is insufficient evidence that he committed the crime of attempted murder, while both appellants claim the evidence was insufficient to support intent to kill or premeditation. We disagree.

The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220-21, 616 P.2d 628 (1980). In a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. *State v. Partin*, 88 Wn.2d 899, 906-07, 567 P.2d 1136 (1977). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *State v. Thomas*, 25 Wn. App. 590,593, 608 P.2d 1254, affirmed, 95 Wn.2d 385 (1980). Credibility determinations are for the trier of fact and are not subject to review. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

At issue here is the prosecution's burden to prove beyond a reasonable doubt that each appellant, personally or as an accomplice, intended to commit murder, acted with premeditation, and took a substantial step to cause the death of

two people, here O'Neil and Barboza. RCW 9A.08.020; RCW 9A.28.020; RCW 9A.32.030.

[Omitted].

Second, Otero and Barasa claim that the evidence was insufficient to support the element of intent to kill. But Otero and Barasa drove up within several feet of O'Neil and Barboza, one of the vehicle's occupants tried to ascertain the victims' gang membership, then two of the occupants opened fire toward O'Neil and Barboza at point blank range. Otero argues that the evidence does not support his conviction because there is no evidence that a bullet caused O'Neil's injury and because there is no evidence that he intended to kill specifically O'Neil, as opposed to some other person. But actual injury by a bullet and intent to kill a specific person are not elements of the crime for which he was charged. A rational jury could find beyond a reasonable doubt that Otero and Barasa intended to kill two Sorinos, and that the two people they shot or shot at were O'Neil and Barboza.

Last, Otero and Barasa challenge the sufficiency of the evidence of premeditation. The planned presence of a weapon necessary to facilitate a killing is adequate evidence to allow the jury to decide whether the crime was premeditated. *State v. Bingham*, 105 Wn.2d 820. 827, 719 P.2d 109 (1986). Here, the evidence showed that Otero and Barasa planned to avenge, an attack on their associates by Sorinos, armed themselves with loaded weapons, traveled to an apartment complex where Sorinos lived, asked their victims what gang they associated with, and then opened fire. This evidence is sufficient to support the jury's finding of premeditation.

State v. Otero, No. 32778-3-II at 19-21, (Wash. Ct. of Appeals, filed Feb. 7, 2006).

This court sees no reason to disagree with the court of appeals' analysis of this issue.

Second, Petitioner alleges evidence did not support the trial court's findings made following the suppression hearing (Claims 14, 15 & 16). After reviewing the record, the undersigned finds these claims are part of a motion to suppress, and should therefore be dismissed as an improper federal habeas claim, as discussed below. However, the undersigned has also reviewed the state court findings in light of the evidence presented and finds no error. Substantial evidence supports the trial court findings on the motion to suppress.

Moreover, the State Court of Appeals also reasonably concluded that the trial court findings were supported by substantial evidence. The State Court of Appeals wrote:

CHALLENGES TO FINDINGS OF FACT

Otero first alleges that the use of the plural "casings" in Finding of Fact No. 4 is erroneous because police found only one .380 shell casing. That finding reads: "Police found spent .45 and .380 caliber shell casings at the scene of the shooting." Supp. CP at 227. But "casings" modifies both the .45 and the .380 caliber shell casings; Police found seven .45 shell casings and one .380 shell casing at the scene. Substantial evidence in the record supports the trial court's Finding of Fact No.4.

Otero next contends that substantial evidence does not support the trial court's use of the word "associates" in Finding of Fact No.7. That finding indicates that the witnesses who provided information for the search warrant affidavit "were known to law enforcement as associates of the defendant." Supp. CP at 228. But "associates" means only that the men were associated, linked in some way. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 132 (1976) (defining "associate" as one joined with another or others in an action, "enterprise, or " business). Although here the link was through gang membership, the inflammatory specifics of their association was not stated.

Otero also assigns error to Finding of Fact No.8, which reads: "The witnesses observed the defendant in an older grey suburban shortly before and shortly after the shooting occurred." Supp. CP at 228. Again, Otero takes issue with the fact that "witnesses" is pluralized, arguing that a single witness, Sanchez, made such an observation. But two witnesses, Sanchez and Martin Chavez, saw Otero in the Suburban shortly after the shooting. 1 CP (Otero) at 45-48 (referring to Otero by his nickname "Big Chico," and on page 47 identifying Otero with that nickname).

Substantial evidence supported the three findings that Otero challenged. State v. Otero, No. 32778-3-II at 8-9, (Wash. Ct. of Appeals, filed Feb. 7, 2006). Again, this court finds no reason to disturb the court of appeals' decision on this issue.

In sum, Petitioner's claims alleging his conviction and the jury's decision is not supported by sufficient evidence must fail. Petitioner's additional claims that the trial court's findings on his motion to suppress are not supported by substantial evidence should also be denied because (i) these claims are encompassed in the "exclusionary rule" excluding Fourth

Amendment claims from federal habeas review (discussed further below) and (2) the trial court's findings are properly supported by the evidence.   The state court properly denied these claims, and the Court should likewise find no merits to Petitioner's claims of insufficient evidence.

**F.**    ***Petitioner's Claim that His Constitutional Rights Were Violated When The Trial Court Found Probable Cause To Support A Search Warrant And Failed To Suppress Is Outside The Scope Of Federal Habeas Corpus Proceedings (Claims 9-13)***

The Fourth Amendment assures the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The exclusionary rule is designed to effectuate these rights. Stone v. Powell, 428 U.S. 465, 482 (1976).  However, the exclusionary rule itself is not a personal constitutional right. Id. at 486. The rule is a judicially created remedial device designed to deter future misconduct by removing the incentive to disregard the Fourth Amendment. Id. at 484.  Evidence obtained in violation of the Fourth Amendment is excluded in the hope that the frequency of future violations will decrease. Id. at 492.  Under Franks v. Delaware, 438 U.S. 154, 156 (1978) , and United States v. Ippolito, 774 F.2d 1482, 1485 (9th Cir.1985), evidence seized pursuant to a search warrant or wiretap must be suppressed if the defendant can prove by a preponderance of the evidence that: (1) in the affidavit in support of the search warrant or wiretap, the affiant included a statement which he knew was false or whose veracity he recklessly disregarded, and (2) the false statement was necessary to the finding of probable cause.

As with any remedial device, application of the exclusionary rule is restricted to those areas where its remedial objectives are thought to be most efficaciously served.  United States v. Calandra, 414 U.S. 338, 348 (1974).  The Supreme Court recognized that implementation of the exclusionary rule at trial and on direct appeal discourages law enforcement officials from violating the Fourth Amendment. Powell, 428 U.S. at 492-93.  "But the additional contribution,

if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to the costs." Id. at 493. For this reason, the Powell Court removed Fourth Amendment claims from the scope of federal habeas corpus review. The Supreme Court held:

> [W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

Powell, 428 U.S. at 482. It is not necessary that a petitioner actually litigate the Fourth Amendment claim in state court. Powell bars habeas corpus review of such claims so long as the petitioner had the opportunity to litigate his claims:

> An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a Fourth Amendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

Caver v. Alabama, 577 F.2d 1188, 1192 (9th Cir. 1978).

Therefore, if the state's judicial procedure affords the criminal defendant an opportunity" to litigate a Fourth Amendment claim, Powell precludes the petitioner from seeking federal habeas corpus review, regardless of whether the petitioner availed himself of that opportunity. Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (whether or not petitioner did in fact litigate his claim in state court, he had the opportunity to do so): Caldwell v. Cupp, 781 F.2d 714, 715 (9th Cir. 1986) ("[a]ll Stone v. Powell requires is the initial opportunity for a fair hearing"); Siripongs v. Calderon, 35 F.3d 1308, 1321 (9thCir. 1994).

Petitioner's claims (Claims 9-13) arguing that the affidavit used to support a search warrant was insufficient and that the trial court failed to suppress certain evidence, like any general evidentiary issue (discussed above) do not present a federal habeas corpus claim.

The Washington Superior Court Criminal Rules provide for a full and fair opportunity to litigate Fourth Amendment claims. *See* Washington State Criminal Procedure Rules CrR 3.5 and 3.6. Prior to commencement of Petitioner's jury trial, a lengthy hearing was conducted to consider a motion to suppress evidence. One of the subjects of the hearing was Mr. Otero's contention that the affidavit for the search warrant did not meet the legal test for informant veracity. Petitioner argued that the affidavit supporting the warrant failed to provide sufficient facts to support a finding of probable cause. The state trial court considered the arguments challenging the affidavit and determined that probable cause existed. Exhibit 13. Petitioner's claims (Claims 9-13) should be denied and dismissed.

Moreover, the State Court of Appeals considered the arguments. It applied both state and federal law and made a reasonable decision in light of the evidence presented to the state trial court. The state court wrote:

> Here, the findings of fact are sufficient to support probable cause to issue the warrant. In summary, the trial court found that: (1) the victims told police that the perpetrators drove an older grey Suburban and fired multiple rounds at the victims from inside the vehicle; (2) police had previously arrested Otero while he was driving an older model grey Suburban; (3) as Barasa got out of the Suburban, he admitted to witnesses that he "hit some guys up" (Supp. CP at 228) using a .45 caliber handgun; (4) the police determined that the perpetrators used a .45 caliber and a .380 semi-automatic firearm, but many shell casings were missing from the crime scene; (5) a witness saw shell casings in Otero's possession shortly after the shooting as Otero got out of the Suburban; and (6) Otero and Barasa were good friends and lived in the same apartment complex. Otero does not assign error to the trial court's conclusion of law that Otero "was likely to hide evidence of the crime such as a gun or ammunition in his home or in his vehicle." Supp. CP at 228. Taken together, these facts and circumstances are sufficient to establish a reasonable inference that Otero was hiding firearms and shell casings in his residence or vehicle. The trial court did not err in holding that probable cause supported the warrant.

> Second, Otero challenges the reliability and personal knowledge of the witnesses whose statements provided the basis for probable cause. When an informant's tip is the basis for probable cause, the *Aguilar-Spinelli* [footnote omitted] test applies and the affidavit must (1) sufficiently identify the basis for

the informant's information and (2) establish the informant's credibility. *State v. Cole*, 128 Wn.2d 262, 287, 906 P.2d 925 (1995). If either part of the *Aguilar-Spinelli* test is deficient, an independent police investigation that corroborates the informant's information may establish probable cause. *Cole*, 128 Wn.2d at 287.

But Otero does not assign error to the trial court's Finding of Fact No. 15, that "[t]he witnesses who provided information to law enforcement had personal knowledge of the events they related to law enforcement based on their own observations." Supp. CP at 228. This finding is therefore a verity on appeal and it is sufficient to establish the first prong of *Aguilar-Spinelli*. RAP 10.3(g); *Tomlinson*, 118 Wn.2d at 501. Further, the affidavit was sufficient to establish the witnesses' credibility because there is an internal logic to their statements, corroborating information known to police about the vehicle driven by the perpetrators, the missing shell casings from the scene, and the relationship between Otero and Barasa. Each statement also is corroborated by the other witnesses' statements. The trial court did not err when it concluded the witness's accounts of the shooting were sufficiently reliable that, when taken together with the other information, an ordinary and reasonably prudent person would have probable cause to believe that the police would likely find evidence at the place that the warrant authorized be searched.

Last, Otero challenges the conclusion that the information contained in the search warrant affidavit was not stale. A delay in executing the warrant may render a probable cause determination stale. State v. Thomas, 121 Wn.2d 504, 513, 851 P.2d 673 (1993). Common sense is the test for staleness. State v. Maddox, 152 Wn.2d 499, 506, 98 P.3d 1199(2004). The information is not stale for purposes of probable cause if the facts and circumstances in the affidavit support a common sense determination that there is continuing and contemporaneous possession of the property intended to be seized. *Maddox*, 152 Wn.2d at 506. Here, 10 days elapsed between the crime and when police executed the search warrant. There is no common sense reason to believe the information was stale. Guns and ammunition do not degrade with time's passage and no evidence was presented to show that Otero relocated the evidence. The trial court did not err in holding that the search warrant was not stale.

Accordingly, we affirm the denial of Otero's CrR 3.5 motion to suppress evidence. Otero's only argument for the suppression of his post-arrest statements rests upon his theory of an unlawful search under the fruit of the poisonous tree doctrine. Otero's statements were made after he waived his Miranda [footnoted omitted] rights and were not tainted by an unlawful search. *See State v. Gaines*, 154 Wn.2d 711, 716-17,116 P.3d 993 (2005) (explaining that the fruit of the poisonous tree doctrine may render a lawful, post-Miranda confession inadmissible only if the confession was tainted by previous unlawful governmental action). Here, the search was lawful, and so we also affirm the trial court's denial of Otero's CrR 3.6 motion to suppress his statements to police.

State v. Otero, No. 32778-3-II at 9-11, (Wash. Ct. of Appeals, filed Feb. 7, 2006).

After reviewing the argument and state court record, the undersigned finds Petitioner was provided a fair opportunity to challenge the validity of the warrant, the seizure of the evidence, and use of his post-arrest statements. The state trial court considered these issues, and rejected Petitioner's arguments prior to trial. Moreover, the Washington State Court of Appeals reasonably determined that Petitioner's claims did not have any merit. Because Petitioner was given a full and fair opportunity to litigate his Fourth Amendment claims (all claims that could have been raised in his motion to suppress) at the state level, these claims are not properly brought in federal court.

G.  *Petitioner's Claims of Prosecutorial Misconduct (Claims 17-18) Do Not Warrant Issuance Of A Writ Of Habeas Corpus*

Federal habeas review of prosecutorial misconduct is limited to the narrow issue of whether the conduct violated due process. Thomas v. Borg, 74 F.3d 1571, 1576 (9th Cir.), *cert. denied*, 117 S.Ct. 227 (1996). Prosecutorial misconduct violates due process when it has a substantial and injurious effect or influence in determining the jury's verdict. Ortiz- Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir.1996). It is permissible for a prosecutor to argue inferences based on evidence introduced at trial. Duckett v. Godinez, 67 F.3d 734, 742 (9th Cir.1995), *cert. denied*, 116 S.Ct. 1549 (1996).

Here, Petitioner claims the prosecutor elicited irrelevant and prejudicial testimony from Detective Jay Alie during rebuttal. Detective Alie was called as a witness on rebuttal allegedly in response to testimony provided by Ms. Swisher, who testified in Mr. Barasa's case in chief that she had seen a multi-colored van leave the scene of the accident and that neither Mr. Barasa or Mr. Otero looked like the individuals she saw in that van. Specifically, the prosecutor asked Detective Alie why he went to interview Ms. Swisher a second time. Detective Alie explained, "Detective Harrison had told me that her daughters, who had been in town on the day of the

incident, may have had contact with possible suspects prior to the incident." Exhibit 12 at 1427.

When asked further questions, Detective Alie stated:

> Yes. So I went out there and I talked to her. She told me that her two daughters had been out in front of their house, that two Hispanic men in a gray Suburban had pulled up and talked to them, spoke to them in Spanish.
>
> She said one of her daughters speaks Spanish. And then those men had driven off.
>
> She suggested her daughters might have seen them and might be able to give me some information about that.

*Id*. at 1428.

The record indicates the trial court allowed the testimony because it was not being offered for the truth of the matter asserted, and on that basis the trial court properly rejected Defendant Barasa's objection. When the prosecutor attempted to ask Detective Alie about his direct conversation with the daughters following his second interview with Ms. Swisher, both Mr. Otero and Mr. Barasa objected, but before the court ruled the prosecutor stated he was finished with his questioning. Petitioner and Mr. Barasa were permitted to cross-examine Detective Alie.

After carefully reviewing the record, the undersigned finds Petitioner has not shown how this testimony from Detective Ali and the prosecutor's conduct had a substantial and injurious effect or influence in determining the jury's verdict. This court finds that petitioner's due process rights were not violated by the prosecutor's statements during closing argument, and the state courts properly rejected this claim.

The Washington State Court ruled similarly, stating:

DETECTIVE ALIE'S TESTIMONY

> Otero further argues that the prosecutor committed misconduct or deprived him of a fair trial when he elicited a statement by Detective Alie that,

according to Swisher's daughters, two Hispanic men drove in a grey Suburban to the crime scene several hours before the shooting. The statement was improper, but we discern no prejudice.

To establish prosecutorial misconduct, the defendant bears the burden to establish that the conduct complained of was both improper and prejudicial. *State v. Stenson,* 132 Wn.2d 668, 718, 940 P.2d 1239 (1997), *cert. denied,* 523 U.S. 1008 (1998). If the defendant proves the conduct was improper, the error is prejudicial if our review of the record reveals that there is a substantial likelihood that the misconduct affected the jury's verdict. *Stenson,* 132 Wn.2d at 718-19. If the defendant fails to object, the prosecutor's misconduct merits reversal only if the conduct was so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *State v. Gentry,* 125 Wn.2d 570, 596, 888 P.2d 1105, *cert. denied,* 516 U.S. 843 (1995).

Here, our review of the record convinces us that Otero was not prejudiced by Detective Alie's testimony, which was essentially cumulative of other evidence properly before the jury. Initially, the trial court correctly ruled that the statement was not hearsay. The statement was not offered to prove the truth of the matter asserted, that two Hispanic men went to the apartment earlier in the day in a grey Suburban, but was instead offered to show why Alie re-interviewed Swisher. *See* ER 801(c). Further, there is no substantial likelihood that the questioning affected the jury's verdict. Otero does not show why this questioning hurt his case and such a conclusion is not easy to reach. No one identified Otero or Barasa as being the drivers of the Suburban seen early in the day, and the state did not try to prove that Otero or Barasa in fact went to the apartment complex earlier. As discussed below, the jury was presented with sufficient evidence to convict Otero and Barasa without relying on this testimony. In any event, the prosecutor's conduct was not "flagrant and ill-intentioned," the standard here in the absence of an objection and request for a curative instruction. *Gentry,* 125 Wn.2d at 596.

Otero also asserts that the prosecutor's conduct deprived him of a fair trial. In the absence of prejudice, there is no fair trial deprivation. We accordingly affirm on this ground.

State v. Otero, No. 32778-3-II at 17-19, (Wash. Ct. of Appeals, filed Feb. 7, 2006).

After reviewing the matter, the undersigned finds the although the state court did not cite or reference any federal law, its decision is not contrary to established federal law, as determined by the Supreme Court. As noted above, the court reviewed the matter under the federal standard and similarly found Petitioner has not shown how the testimony from Detective Ali and the

prosecutor's conduct had a substantial and injurious effect or influence in determining the jury's verdict.

### D. Cumulative Error

"Although no single alleged error may warrant habeas corpus relief, the cumulative effect of errors may deprive a petitioner of the due process right to a fair trial." <u>Karis v. Calderon</u>, 283 F.3d 1117, 1132 (9th Cir.2002).

Petitioner argues the above errors when combined together, result in cumulative error. As discussed above, the court found no error in the previous eighteen grounds raised. Therefore, there is no error to accumulate.

## <u>CONCLUSION</u>

Based on the foregoing discussion, the Court should deny the petition for writ of habeas corpus. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **June 26, 2009**, as noted in the caption.

DATED this 3rd day of June, 2009.

J. Richard Creatura
United States Magistrate Judge